NOT FOR PUBLICATION (Doc. No. 49)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JEANNE MARIE BRUNOZZI, | |
| Plaintiff, | Civil No. 13-4585 (RBK/JS) |
| v. | **OPINION** |
| CROSSMARK, INC. | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant Crossmark, Inc.'s ("Crossmark") Motion for Partial Summary Judgment (Doc. No. 49) on Plaintiff Jeanne Marie Brunozzi's ("Brunozzi") Amended Complaint (Doc. No. 39.)  Brunozzi alleges violations of the Fair Labor Standards Act (FLSA) and the New Jersey Wage and Hour Law (NJWHL).  For the reasons expressed herein, Defendant's Motion for Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART.**

I.   FACTUAL AND PROCEDURAL BACKGROUND

A. The Facts

The Court recites those facts relevant to deciding the pending motion for summary judgment, and resolves any disputed facts or inferences in favor of Brunozzi, the nonmoving party.  Trinity Indus., Inc. v. Chi. Bridge & Iron Co., 735 F.3d 131, 134–35 (3d Cir. 2013).

Crossmark provides in-store marketing and merchandising services to companies selling consumer products that include Land O'Lakes, Gerber, and General Mills products.  (Def.'s

1

Statement of Undisputed Material Facts ("SMF") ¶ 1; Brunozzi Dep. dated March 17, 2015, 14:15–19, Doc. No. 68.)  Brunozzi is an hourly-paid Retail Representative for Crossmark, where she has been employed since 1999. (Id. ¶ 6.)  Brunozzi worked as a full-time Retail Representative from 1999 to March 2009, at which point she continued her position but in a part-time capacity.[1]  (Id.)   As a full-time Retail Representative, Brunozzi had a set number of stores that she was responsible for servicing.  (Id. ¶ 9; see Brunozzi 2015 Dep. 22:5–9.)  She would begin her workday by performing various administrative tasks that required her to connect to Crossmark's website to check emails and receive assignments. (Id. ¶ 15.)  She would also spend time loading her car with the day's materials.  (Id. ¶ 37.)  Some of these tasks could also be performed the evening before, and could be performed at locations other than her home, such as her husband's office or the library.  (Id. ¶¶ 48, 51; Brunozzi Dep. dated July 12, 2011, 93:5–25.) Brunozzi estimates that as a full-time retail representative, she spent an average of an hour to an hour and a half each day on administrative tasks for which she was not compensated.  (Brunozzi 2011 Dep. 81:4–82:23.)  Brunozzi's Complaint also alleges she was not properly compensated for her commute time because Crossmark compensates employees for their commute to the first store of the day and home from the last store of the day only if the commute exceeds one hour or forty miles. (Id. ¶¶ 34.)

      Brunozzi recorded the time she spent working in Crossmark's SalesTrak system, which she accessed online through Crossmark's employee website.  (Id. ¶¶ 15–16.)  Crossmark's written policy requires its employees not to estimate the time they spent working but to accurately record and submit all actual time spent on work duties.  (Id. ¶ 29.)  Brunozzi was

---

[1] Brunozzi currently works between three to five hours per week, but from 2012 to 2014, she worked anywhere from five to twenty hours per week.  (Id. ¶¶ 9, 10.)   In her capacity as a part-time retail representative, she completes designated projects in various stores.  (Id. ¶ 9.)

2

trained on how to report her time into SalesTrak, and no one other than Brunozzi ever entered her time into SalesTrak. (Id. ¶¶18–19.) The parties do not dispute that Brunozzi was paid for all the time she recorded in SalesTrak. (Id. ¶ 21.) Brunozzi is seeking compensation for time spent working on administrative tasks, such as answering emails, printing materials, and loading materials into her car, that she did not report in SalesTrak.

The parties dispute whether Brunozzi's supervisors told her that she was to record no more than forty hours per week and thirty minutes of administrative time per day. (Def.'s SMF ¶¶ 62–65; Pl.'s Resp. SMF ¶¶ 62–65.) Brunozzi alleges that her former supervisor Donna Burke ("Burke") instructed her on multiple occasions not to report more than 40 hours a week or thirty minutes of administrative time per day and reprimanded her on the occasions that she did.[2] (Pl.'s Resp. SMF ¶¶ 62–65.) Accordingly, Brunozzi contends that she did not record all the time she spent on administrative tasks because she was fearful of losing her job. (See, e.g., Brunozzi 2011 Dep. 113:12–17.) Brunozzi never complained to management that Burke or any other supervisor discouraged her from accurately reporting her hours. Indeed, on multiple occasions, Brunozzi worked and reported more than forty hours in a workweek. (Def.'s SMF ¶ 46; Pl.'s Resp. SMF ¶ 46.)

**B. Procedural Background**

Prior to initiating her claims in this Court, Brunozzi was part of a putative collective action in the Eastern District of Pennsylvania, namely Postiglione et al. v. Crossmark, No. 11-cv-960. The plaintiffs in Postiglione were current and former retail representatives of Crossmark

---

[2] Brunozzi's deposition testimony is conflicting. In 2011, she testified that Burke instructed her not to report more than forty hours per week or thirty minutes of administrative time per day. However, in 2015, Brunozzi testified that she could not remember any supervisor who reprimanded her after she entered more than forty hours in any given week. (Brunozzi 2015 Dep. 107:4–13.) In one instance, she also stated that she could not remember why she failed to report all of her administrative time. (Id. 80:7–23.)

3

and sought to certify a nationwide class of retail representatives for violations of § 216(b) of the FLSA.  See Postiglione, No. 11-cv-960, 2012 WL 5829793, at *1 (E.D. Pa. Nov. 15, 2012).  The court declined to conditionally certify the class on grounds that the class members were not similarly situated to the named plaintiffs.  Id. at 6–8.  The court also dismissed Brunozzi and the remaining named plaintiffs other than Postiglione from the action as improperly joined under Federal Rule of Civil Procedure 20.  Id. at *20.

On January 24, 2013, Brunozzi filed an individual complaint against Crossmark in the Eastern District of Pennsylvania.  (Doc. No. 1.)  On June 27, 2013, that court transferred the case to the District of New Jersey and denied without prejudice Brunozzi's motion to equitably toll the statute of limitations from November 14, 2012—the date on which the class certification was denied—through January 24, 2013 when she filed her individual complaint.  (Doc. No. 13.)  Brunozzi did not renew her motion for equitable tolling of the statute of limitations with this Court.  (Id.)

On April 15, 2015, Crossmark filed the instant motion for summary judgment.[3]  (Doc. No. 45.)  Brunozzi opposed Crossmark's motion on May 4, 2015.  Having been briefed by the parties, the issues are now ripe for the Court's review.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute

---

[3] On June 5, 2015, Crossmark refiled its motion for summary judgment with corrected signatures. (Doc. No. 49.)

4

of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' —that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 Fed. App'x. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province

of the fact finder, not the district court.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  DISCUSSION

Crossmark moves for summary judgment on Brunozzi's FLSA and NJWHL claims for (1) wages for time spent commuting between home and work, (2) unreported in-store time, and (3) unreported, unpaid administrative time.  Brunozzi concedes that the time spent driving to her first retail location of the day and home from her last retail location of the day is not compensable.  (See Pl.'s Opp. Br. 4.)  Summary judgment in favor of Crossmark is therefore granted on this claim.  Brunozzi also clarifies that she is not making a claim for any unreported time spent on in-store duties.  (Id. at 5.)  As such, the remaining issue for this Court to decide is whether Crossmark is entitled to summary judgment on Brunozzi's FLSA and NJWHL claims for unreported, unpaid administrative time.

#### A.  FLSA Claim

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  Davis v. Abington Memorial Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1527 (2013)).  It provides that qualified employees have a right to be compensated for time worked in excess of forty hours per week at a rate of one and a half times the employee's regular rate.  29 U.S.C. § 207(a)(1).  An employer who violates this provision is liable to the employee in the amount of unpaid overtime wages and an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  The FLSA's statute of limitations on an employee's claims depends on the type of violation:  two years for ordinary violations and three years for willful violations.  29 U.S.C. § 255(a).  "To establish a willful violation, the employee must provide sufficient evidence

indicating that he employer 'either knew or showed reckless disregard' as to whether its conduct was prohibited by the FLSA." Bettger v. Crossmark, Inc., No. 13-cv-2030, 2014 WL 2738536, at *4 (M.D. Pa. June 17, 2014) (quoting McLaughlin v. Richland Shoe, 486 U.S. 128, 133 (1988)).[4] An employer does not willfully violate the FLSA by acting negligently or by incorrectly yet reasonably determining its legal obligations under the statute. Id.

Brunozzi can recover under the FLSA for claims arising on or after April 21, 2009 absent a showing of willfulness on Crossmark's part or April 21, 2008 with a showing a of willfulness. The statute of limitations is determined by counting back from February 9, 2011, the date on which Brunozzi and her co-plaintiffs filed the Postiglione lawsuit, and subtracting 71 days for the time she lost between Postiglione's dismissal on November 14, 2012 and January 24, 2013 when she filed the instant suit. See Bettger, 2014 WL 2738536, at *4 n.4 (similarly computing the statute of limitations). In light of ample case law supporting the Court's calculation, the Court does not adopt Brunozzi's argument that the statute of limitations should cease only upon Postiglione's becoming final.[5]

Moreover, the FLSA "requires payment of minimum wages and overtime wages only." Davis, 765 F.3d at 244 (citing 29 U.S.C. §§ 201–19). "[S]traight time wages" for unpaid work

---

[4] The procedural history and facts in Bettger and the instant care are quite similar. Like Brunozzi, the plaintiff in Bettger was dismissed from Postiglione and later brought an individual complaint against Crossmark.

[5] See, e.g., Crown, Cork, & Seal Co. v. Parker, 462 U.S. 345, 354 (1983) ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."); Taylor v. United Parcel Service, Inc., 554 F.3d 510, 519 (5th Cir. 2008) ("[I]f the district court denies class certification under Rule 23, tolling of the statute of limitations ends . . . . [A]n appeal of the denial of class certification does not extend the tolling period."); Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1381–84 (11th Cir. 1998) ("[C]ontinued tolling of the statute of limitations after the district court denied class certification is unnecessary to protect any *reasonable* reliance by putative class members on their former class representatives." (emphasis in original)).

during pay periods without overtime are not compensable. Id. Thus, her FLSA overtime claim for unpaid administrative tasks ceases at the time she began working part time.

Crossmark argues that it is entitled to summary judgment on Brunozzi's claims for overtime she spent on administrative tasks but did not report in SalesTrak. A plaintiff-employee seeking to recover for for unpaid overtime under the FLSA bears the burden of proving she performed work for which she was not compensated. Alers v. City of Phila., 919 F. Supp. 528, 558 (E.D. Pa. 2013) (citing Sniscak v. Borough of Raritan, 86 Fed. App'x. 486, 487 (3d Cir. 2003)). The plaintiff-employee "must demonstrate that the defendant-employer had either actual or constructive knowledge of the plaintiff's overtime work." Id. (citation omitted). When an employer encourages employees to misreport their hours, it cannot claim it had no knowledge of the underreporting. Bettger, 2014 WL 2738536, at * 6. In addition, to recover damages an employee must also "prove by a preponderance of the evidence the amount and extent of the uncompensated work that she performed." Id.

Crossmark cannot be held to have violated the FLSA if it had no knowledge that Brunozzi worked overtime and was not compensated. Brunozzi claims that her supervisor Burke discouraged her from reporting all of her hours worked. Crossmark denies that Brunozzi's supervisors ever instructed Brunozzi to under report her hours and claims that Brunozzi's inconsistent deposition testimony warrants summary judgment. The Court disagrees. Crossmark is not entitled to summary judgment on the basis of Brunozzi's conflicting deposition testimony. While the conflicting testimony undercuts Brunozzi's credibility, the Court must construe all reasonable inferences in favor of Brunozzi. Anderson, 477 U.S. at 255. Which portions of Brunozzi's deposition testimony are truthful is a job for the jury and not this Court. Her assertion that she was instructed to under report her hours is sufficient to create an issue of

material fact as to whether Crossmark knew Brunozzi was working overtime and receiving no compensation and whether Crossmark, through Burke's instruction, willfully violated the FLSA's overtime provisions.

With respect to damages, the Court agrees with Crossmark that Brunozzi may recover liquidated damages only on unpaid overtime wages. A plain reading of 29 U.S.C. § 216(b) compels the Court's interpretation that an employer is liable for liquidated damages in the amount *equal to overtime compensation*.[6] The Court has found no Third Circuit decision interpreting the provision otherwise and therefore grants Crossmark's motion for summary judgment on this issue.

To demonstrate her damages, Brunozzi has provided an estimation of her unpaid work time. The question then arises whether she has satisfied her burden of proving "by a preponderance of the evidence the amount and extent of the uncompensated work that she performed." Bettger, 2014 WL 2738536, at * 6. An employee's burden is relaxed when an employer keeps inaccurate or inadequate records. As summarized in Bettger,

> If an employer knows that an employee failed to properly record or claim her overtime hours and the employer does not take active steps to correct the problem, it may not subsequently deny the employee compensation for the hours worked. It follows that when an employee omits relevant information when contributing to the employer's payroll records as a result of the employer's instruction or encouragement, the employee may invoke [the] relaxed standard for incomplete or inaccurate records.

---

[6] Section 216(b) reads as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

9

2014 WL 2738536, at *9.  In light of the evidence that Brunozzi under reported her hours in SalesTrak because of Burke's alleged instruction, a jury could reasonably find her estimation sufficiently demonstrates the extent of her unpaid administrative time.  Despite the evidence appearing to weigh strongly in Crossmark's favor, Brunozzi's FLSA overtime claim for unpaid administrative time survives summary judgment.

### B. New Jersey Wage and Hour Law

The NJWHL establishes the amount for minimum wage and overtime rates and provides a private right of action for employees to recover unpaid overtime payments.  See Thompson v. Real Estate Mortg. Network, Inc., 106 F. Supp. 3d 486, 489-92 (recognizing a private right of action to recover unpaid overtime under the NJWHL).  The parties agree that Brunozzi's NJWHL claim covers violations that occurred on January 24, 2011 or later. (See Pl.'s Br. 6, Doc. No. 46; Def.'s Reply Br. 5, Doc. No. 48.)

From 2011 and on, Brunozzi was working as a part-time employee and thus seeks "straight-time wages" that she did not recover as a part-time employee.  (Pl.'s Br. 7.)  However, like the FLSA, the NJWHL does not provide a remedy for unpaid, non-overtime wages.  Indeed, the two statues share the similar purpose of protecting employees "from unfair wages and excessive hours."  Hargrove v. Sleepy's LLC, 106 A.3d 449, 458 (N.J. 2015).  The Supreme Court of New Jersey has recognized the similarity between the statutes, adding that "[s]tatutes addressing similar concerns should resolve similar issues . . . by the same standard."  Id. at 463.  Given the similarities between the FLSA and the NJWHL, and the fact that the latter mentions only unpaid wages for work in excess of forty hours, the Court finds that Brunozzi may not recover unpaid wages for non-overtime work under the NJWHL.  Summary judgment is therefore granted in Crossmark's favor.

## IV. CONCLUSION

For the foregoing reasons, Crossmark's Motion for Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART.**


Dated: 1/11/2016                             s/Robert B. Kugler
                                             ROBERT B. KUGLER
                                             United States District Judge